IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY CAPPUCCIO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PFIZER, INC. | : | NO.  2:07-CV-0549-LDD |

MEMORANDUM

Davis, J.                                                                   August 30, 2007

        Presently before the Court are Defendant's Motion for Summary Judgment (Doc. No. 14),

Plaintiff's Response in Opposition (Doc. No. 17) and Defendant's Reply thereto (Doc. No. 24).

For the reasons set forth below, summary judgment will be granted in favor of Defendant on all

of Plaintiff's claims.

I.        FACTUAL BACKGROUND[1]

        Plaintiff Jeffrey Cappuccio is a former employee of Defendant Pfizer, Inc.  Prior to

working for Pfizer, he was employed by Pharmacia Corporation from approximately 1997 to

2003.  Declaration of Jeffrey Cappuccio ("Cappuccio Decl."), at ¶ 1.  In July 2002, Pharmacia

agreed to be acquired by Pfizer, and the merger took formal effect on April 16, 2003.  Def.'s

Statement of Material Facts ("DSMF"), at ¶¶ 7, 11.  Cappuccio accepted an offer of employment

from Defendant shortly before the merger, and began working for Pfizer as a District Sales

Manager in the Mid-Atlantic Region in April 2003.  Id., at ¶ 10.  At this time, he was assigned to

the Allentown District.  See Def.'s Motion, Ex. 2, PLF0037.  This sales territory included much

of eastern Pennsylvania, extending south from the New York state border through Scranton,

---

        [1] The following facts are undisputed unless otherwise noted.

1

Allentown, King of Prussia and east through Jenkintown and Levittown.  Cappuccio Decl., at ¶ 3.
The Allentown District did not extend to Philadelphia.

In September 2004, Plaintiff learned that Pfizer had plans to carry out a "Field Force
Optimization" ("FFO") in the immediate future.  Cappuccio Decl., at ¶ 4.  Under the FFO, Pfizer
reevaluated the placement of all of its District Sales Managers and made geographic adjustments
based on, *inter alia*, the employee's product experience, performance and career progression, if
necessary.  DSMF, at ¶¶ 16-19.  On March 21, 2005, Plaintiff received a "formal phone call"
from his Regional Manager explaining that under the FFO, as of September 1, 2005, his assigned
sales territory would be modified to consist of North Philadelphia, Northeast Philadelphia,
Levittown and Jenkintown.  Cappuccio Decl., at ¶ 6.  Other than a change of geographic
assignment, his position, base salary, target bonus, and general responsibilities were to remain
unchanged under the FFO.  Declaration of Ann Hodges[2] ("Hodges Decl."), at ¶¶ 11-12, 17.
Pfizer did not require Plaintiff to move his residence as part of the reassignment; at all relevant
times, Plaintiff lived in Horsham, Pennsylvania.  Compl., at ¶ 1; DSMF, at ¶ 24.  However,
Plaintiff viewed the FFO as a "constructive demotion or discharge" because he would have been
"reassigned to a smaller and less desirable sales territory, and given less responsibility and
potential for advancement than the position [he] had originally accepted with Pfizer back in
2003."  Cappuccio Decl., at ¶ 13.  Nevertheless, there is no evidence that Plaintiff informed
anyone at Pfizer of these views prior to his resignation.  See Cappuccio Decl., at ¶ 15.  On June
2, 2005, Plaintiff resigned his position as District Sales Manager of the Allentown District:

---

[2] Ann Hodges is Director of Human Resources for Defendant Pfizer.  Declaration of Ann
Hodges, at ¶ 1.

> This letter shall serve as my formal resignation from Pfizer.  At this time, I have decided to pursue a career opportunity outside of the organization.  This was a very difficult decision for me to make because my experience with Pfizer has been a positive one ... However, I feel that this new position affords me the opportunity to achieve my goals for future career advancement in a more commutable location ... My last effective date of employment with the company will be Friday, June 17, 2005.

Def.'s Motion, Ex. 1, DEF000128.  Pfizer subsequently accepted Plaintiff's resignation effective

June 18, 2005.  Id., DEF000125.

While Plaintiff was employed at Pfizer, he was covered by the Pharmacia Separation

Benefit Plan ("Separation Plan")[3], the Pfizer Annual Incentive Plan ("AIP") and had received a

number of company stock options.  Id., Ex. 2, PLF0037-PLF0038.  The Separation Plan is a

"formal employee welfare benefit plan" governed by the Employee Retirement Income Security

Act of 1974 ("ERISA").  Id., Ex. 1, DEF000295 at § 1.01.  It provided former Pharmacia

employees with severance benefits in the event "they separate from [Pfizer] due to an

'Acquisition Termination'."  Id., Ex. 2, PLF0021.  "Acquisition Termination" is "a termination

of employment within two years of the Acquisition that is involuntary or that is as a result of his

or her rejection of an offer of continued employment with the Company or an affiliate if such

employment is not a Comparable Position."  Id.  There is no dispute that the "Acquisition" for

purposes of the Separation Plan occurred on April 16, 2003.  "Comparable Position" is further

defined as:

> employment with the Company or a successor employer, in a position that would

---

[3]  The Separation Plan was modified following Pharmacia's merger with Pfizer by the Pfizer Acquisition Compensation and Benefits Implications for U.S.-Based Pharmacia Employees.  See Def.'s Motion, Ex. 2, PLF0018-PLF0036.  All discussions of Plaintiff's entitlement to severance benefits in this Memorandum will refer to the terms of the Separation Plan, as modified.

3

not constitute a demotion under Pharmacia's compensation guidelines or is two or more levels lower on a Company-recognized career ladder, provided that, upon an Acquisition Termination, it shall not constitute a Comparable Position if the Company requires the employee to relocate more than fifty (50) miles within the state in which the employee's principal business location is located immediately prior to such relocation or the employee's principal business location is relocated to a different state or the employee is required to materially increase his/her business travel.

Id., Ex. 2, PLF0021.

The AIP is a performance-based incentive award plan which provided eligible employees with annual bonuses depending on individual, business unit and overall company performance. DSMF, at ¶ 14.  The 2005 AIP provided that employees who are "terminated for cause or for unsatisfactory performance" or who "voluntarily leave the Company" during the plan year will "forfeit" their AIP payout for that year.  Def.'s Motion, Ex. 1, DEF000261.  However, "if employment is terminated for any other reason ... [the employee] will be eligible for a prorated AIP payout."  Id.

Plaintiff was also awarded a number of options for the purchase of Pfizer stock in 1998 and 2000.[4]  DSMF, at ¶¶ 2, 5.  There is no dispute that the options at issue were fully vested at the time of Plaintiff's separation from Pfizer and thus were exercisable by Plaintiff.  Under the terms of these original grants, however, the 1998 and 2000 options "shall cancel on the termination date of the Optionee" except where employment terminates as a result of death, disability, "normal retirement," or "under terms approved by the Compensation Committee of the

_____

[4]  When the options were awarded to Plaintiff, they were for the purchase of Pharmacia stock.  Following Pfizer's acquisition, the options were converted to those for the purchase of Pfizer stock.  Def.'s Motion, Ex. 2, PLF0036.  However, the terms governing the exercise and cancellation of those Pfizer options remain as governed by the original terms of the option grants in 1998 and 2000.  Id. ("the Terms, Conditions and Provisions of each stock option grant you hold will govern").

Board of Directors." Id., at ¶¶ 4, 6; Def.'s Motion, Ex. 1, DEF000345-DEF000346; DEF000351.

Prior to separating from Pfizer on April 22, 2005, Plaintiff inquired of Merrill Lynch, Pfizer's designated broker for its employees' exercise of their stock options, as to how his options would be affected if he left the company. See Def.'s Motion, Ex. 1, DEF000338[5]. The representative, "Lee," indicated that he did not have the information pertaining to Plaintiff's pre-2002 options offhand, but advised Plaintiff to "review all of the documents received with the grant, which would include the terms and conditions associated with the grant." Id., at DEF000338-DEF000339. Plaintiff explained that he knew when his options would expire, but explicitly inquired: "if I were to voluntarily terminate, is there any action I need to take with those options within a certain period of time?" Id., at DEF000339. Lee stated that he would research the terms of Plaintiff's pre-2002 options and would call Plaintiff back with the information. Id. Five days later, Merrill Lynch's electronic records indicate that Lee left a message on Plaintiff's voicemail and asked Plaintiff to call him back to discuss the research request pertaining to the options. Id., at DEF000341. Plaintiff disputes ever receiving this message. Cappuccio Decl., ¶ 12. The next time Plaintiff called Merrill Lynch with regard to his stock options was on June 23, 2005, after he had separated from Pfizer. Id., at ¶ 14. At this point, Merrill Lynch advised him that his 1998 and 2000 options had been canceled by Pfizer. Def.'s Motion, Ex. 1, DEF000342. Plaintiff learned that these options had terminated as of the

---

[5] Based on the declaration of Craig Long, a Merrill Lynch Client Relationship Manager, telephone calls from Pfizer employees to Merrill Lynch pertaining to Pfizer stock options are digitally recorded and retained in the regular course of business. Def.'s Reply, Ex. C, Declaration of Craig Long, at ¶ 4. It would appear that such recordings and transcripts derived therefrom would be admissible at trial pursuant to the business records exception to the hearsay rule, provided they were properly authenticated and the proper foundation for them established. Fed. R. Evid. 803(6).

effective date of his resignation.  Cappuccio Decl., at ¶ 14.

II.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A "material fact" is one that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must accept all of the non-movant's statements as true and make all reasonable inferences in favor of the non-moving party.  Anderson, 477 U.S. at 256.  A non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  A party cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor.  Anderson, 477 U.S. at 248; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Summary judgment is appropriate where a party fails to make a sufficient showing on an essential element of his case for which he will bear the burden of proof at trial.  Celotex, 477 U.S. at 323.

III.    DISCUSSION

Plaintiff instituted the instant action based on Defendant's alleged violations of the

Employee Retirement Income Security Act of 1974 ("ERISA") and the Pennsylvania Wage Payment and Collection Law ("WPCL").  In particular, Plaintiff seeks recovery of (1) severance benefits under the Separation Plan, (2) a prorated incentive bonus under the AIP for 2005, and (3) the right to exercise his 1998 and 2000 stock options.  His claim of severance benefits is made under ERISA, whereas his claims for the bonus payment and stock options are made pursuant to the WPCL.

      A.      ERISA Claim Under Separation Plan

Plaintiff claims that he is eligible for severance pay pursuant to the Separation Plan. However, Defendant counters that Plaintiff is not entitled to any severance benefits because (1) Defendant is not the proper party for a claim of ERISA benefits; and in any event, (2) Plaintiff does not qualify for benefits under the explicit terms of the Separation Plan.

ERISA provides that claims for benefits arising out of an ERISA plan should be brought against the plan as a separate entity.  29 U.S.C. § 1132(d)(1)-(2); see, e.g., Mein v. Carus Corp., 241 F.3d 581, 584 (7th Cir. 2001).  The Third Circuit has held that an employer may be a proper party in an ERISA suit for the recovery of benefits if the employer is a fiduciary of the plan at issue.  Curcio v. John Hancock Mutual Life Ins. Co., 33 F.3d 226, 234 (3d Cir. 1994); Vaughn v. Metro. Life Ins. Co., 87 F. Supp. 2d 421, 425 (E.D. Pa. 2000).  Employers who are plan administrators, whether in a *de facto* or *de jure* capacity, may also be liable for benefits.  Curcio, 33 F.3d at 234 ("ERISA makes clear that a fiduciary is one that maintains discretionary authority or discretionary responsibility in the administration of the plan"); see also Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 350 (5th Cir. 2003) (employer is proper defendant in ERISA claim for benefits where the ERISA plan "has no meaningful existence

separate from [the employer]").

In this case, however, the Court need not resolve the question of whether Pfizer is a proper party to the ERISA claim[6] because regardless of to whom the claim is directed, Plaintiff is not entitled to severance benefits.  Here, the Separation Plan unambiguously provides that an employee may obtain severance pay only where the employee "separate[s] from [Pfizer] due to … a termination of employment within two years of the Acquisition that is involuntary or that is as a result of his or her rejection of an offer of continued employment with the Company or an affiliate if such employment is not a Comparable Position."  Def.'s Motion, Ex. 2, PLF0021.  As this language makes clear, the most fundamental prerequisite to demonstrating an entitlement to severance benefits is a termination of employment within two years of April 16, 2003.  In this case, it is undisputed that Plaintiff did not separate from or otherwise terminate his employment with Pfizer until June 2005.  Accordingly, Plaintiff is not eligible for severance benefits under the plain terms of the Separation Plan.[7]  Because Plaintiff has not demonstrated the existence of an

---

[6] To the extent Plaintiff, in his opposition to Defendant's instant Motion for Summary Judgment, asks for leave to amend his Complaint to add the Separation Plan as a party to the litigation, the Court finds it unnecessary to consider the request because of its conclusion as to the merits of the underlying ERISA claim.  Even if the request for leave is procedurally proper, it must be denied because amendment would be futile.  See, e.g., Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

[7] Alternatively, Plaintiff argues that because he received "an offer" within two years of the acquisition of a "non-comparable position," namely, he was notified in March 2005 that his sales territory would be changed in September 2005 to consist of North Philadelphia and surrounding areas, he is entitled to severance pay.  Even assuming, arguendo, that his supervisor's phone call to him describing his new sales territory was "an offer" and that the reassignment of sales districts was not a "comparable position" under the Separation Plan, Plaintiff's argument would nevertheless fail because he has proffered no evidence that he ever rejected the offer prior to resigning in June 2005, outside of the two-year window.  As such, no timely termination could have occurred "as a result" of the rejection of the offer as is required by the plan terms.

issue of fact for trial, Defendant Pfizer is entitled to summary judgment on Plaintiff's ERISA claim.

      B.     Pennsylvania Wage Payment Collection Law Claims

      Plaintiff also raises Pennsylvania Wage Payment Collection Law claims for a prorated bonus under Pfizer's 2005 Annual Incentive Plan and for the reinstatement of his 1998 and 2000 stock options. 43 Pa. Cons. Stat. § 260.1 et seq. The WPCL provides that "[e]very employer shall pay all wages … due to his employees." 43 Pa. Cons. Stat. § 260.3(a). Courts have uniformly held that the WPCL creates a statutory remedy on behalf of employees for the recovery of wages and benefits owed to them by contract but wrongfully withheld by employers. See, e.g., Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997); Gautney v. Amerigas Propane, Inc., 107 F. Supp. 2d 634, 646 (E.D. Pa. 2000).

      a.     Incentive Plan Benefits

      Bonus payments are recoverable under the WPCL. See 43 Pa. Cons. Stat. § 260.2a (WPCL "wages" include "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation"); Gautney, 107 F. Supp. 2d at 646 (bonuses included in "wages"). As with all WPCL claims, the terms of the particular contract at issue control in determining whether the claimed bonus is "due" to the employee. Weldon v. Kraft, 896 F.2d 793, 801 (3d Cir. 1990); Gautney, 107 F. Supp. 2d at 646.

      The contract in this case is Pfizer's 2005 Annual Incentive Plan. In general, to be eligible for bonus payments under the AIP, the employee must have worked for Pfizer for the entire plan year. In particular, AIP provides that if the employee is "terminated for cause or for unsatisfactory performance" during the year or "voluntarily leave[s] [Pfizer] prior to January 1 of

the following Plan year," the employee will "forfeit any AIP payout" for that year.  Def.'s

Motion, Ex. 1, DEF000261.  However, "if [] employment is terminated for any other reason

(such as position elimination), [the employee] will be eligible for a prorated AIP payout."  Id.

Elsewhere in a section of the employee brochure summarizing AIP changes for 2005, it states

"[p]articipants who leave the AIP before the end of the Plan year for reasons of retirement, …

separation due to restructuring/job elimination, death or commencement of long-term disability []

will be eligible to receive a prorated payment."  Id., Ex. 1, DEF000250.

      Based on this language, Plaintiff argues that the AIP prorated payout is keyed only to

"separation," and "does not make any distinction between voluntary termination and involuntary

termination."  Pl.'s Resp. at 13 n.5.  Therefore, Plaintiff contends, without citation to any legal

authority, that because Pfizer described the FFO which resulted in his new sales assignment as a

"nationwide realignment" in its submissions before this Court, the FFO "was clearly a

'restructuring'" such that his termination "in connection with" that restructuring entitles him to a

prorated payout for 2005.  Id. at 13.

      The Court disagrees.  First, even viewing the record in the light most favorable to

Plaintiff, no reasonable trier of fact could find that his separation from Pfizer in 2005 was

anything other than a voluntary resignation.  There is no dispute that Plaintiff's position title,

general responsibilities, base salary and benefits were to have remained the same both before and

after the FFO.  Furthermore, Plaintiff has failed to put forth any competent evidence that his total

compensation, based on potential AIP bonuses, would have been lower under the FFO as

compared with that of his pre-FFO assignment.  Cf. Kroen v. Bedway Sec. Agency, Inc., 633

A.2d 628, 634 (Pa. Super. 1993) (whether demotion constituted constructive discharge where

employee's weekly hours were reduced from forty to sixteen and hourly pay rate was reduced from $5.50 to $4.00, resulting in an approximate 71% reduction in weekly wages, was fact issue for jury).  The only changes were that Plaintiff would have, some months *after* he actually left Pfizer, been responsible for a sales territory he considered to be "less desirable," and would have had to "re-establish business relationships with the majority of the accounts in [his] new geography."  Cappuccio Decl., at ¶¶ 13, 9.  From this, no reasonable factfinder could conclude that Pfizer constructively terminated Cappuccio such that he is entitled to a prorated bonus payment for 2005.  See, e.g., Carlson v. Cmty. Ambulance Svcs., Inc., 824 A.2d 1228, 1232 (Pa. Super. 2003) (constructive discharge requires that working conditions are so intolerable that a reasonable person would have been forced to resign).

       Second, there was plainly no "job elimination" in this case.  Even assuming, *arguendo*, that the FFO was a "restructuring" under the AIP, it is not a reasonable reading of the contract language that "separation due to restructuring/job elimination" encompasses *all* separations subsequent to the FFO, including the voluntary resignations of employees who were not objectively adversely impacted by the FFO.  Here, no trier of fact could find, notwithstanding Plaintiff's subjective speculation that the new assignment would have hampered his career advancement prospects and his ability to meet sales goals, that his separation from Pfizer was a "separation *due to* restructuring/job elimination" under the AIP.  See, e.g., Dyszel v. Marks, 6 F.3d 116, 129-30 (3d Cir. 1993) ("self-serving allegations are entitled to little weight, and are insufficient to raise triable issue of fact"; "objective, credible evidence" required); Boykins v. Lucent Technologies, Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) ("[s]peculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact").  Because

there is no genuine dispute that Plaintiff voluntarily resigned his employment prior to January 1, 2006, he is not entitled to any AIP payment for 2005.  Accordingly, summary judgment on Plaintiff's WPCL claim as to the Annual Incentive Plan will be granted for Defendant.

      b.    <u>Pfizer Stock Options</u>

With regard to the stock options, Plaintiff cannot recover under the WPCL.  While there is no dispute that the options at issue were fully vested prior to Plaintiff's separation from Pfizer and thus may have been wages "due" to him, that Plaintiff failed to exercise them in accordance with the terms of their grant is fatal to his claim.  <u>See</u> Williston on Contracts § 46:12 (4th ed. 1990) (option contracts are irrevocable offers; "the party giving the option is protected only by the condition that the optionee can only exercise it strictly … within a specified time and otherwise in accordance with specified terms").  In this case, Plaintiff does not claim that he did not receive the original grant documents providing for the terms of the options' cancellation or that he did not understand them.  He seems merely to be contending that Pfizer had some affirmative obligation to inform him of his rights as to his stock options.  However, he has identified no contractual provision imposing such a duty on Defendant.[8]  <u>See</u> <u>Sheils v. Pfizer</u>, 156 Fed. Appx. 446, 451 (3d Cir. 2005) (rejecting identical argument that Pfizer prevented employee from exercising his options by failing to inform him how to exercise the options; the option agreements do not impose such duties on the optionor).  Nor has he demonstrated any evidence that Defendant prevented him from timely exercising his options by wrongfully

---

[8]  That there is a dispute as to whether Merrill Lynch ever called Plaintiff to follow up on his phone inquiry is irrelevant to his WPCL claim; nothing prevented Plaintiff from calling back himself prior to his resignation.  <u>Sheils v. Pfizer</u>, 156 Fed. Appx. 446, 451 (3d Cir. 2005) (no WPCL claim where plaintiff's phone calls inquiring as to the terms of his options went unreturned, employee's own "neglect or inadvertence" was to blame).

terminating him.  Cf. Scully, 238 F.3d at 506 (employer violated WPCL where it wrongfully terminated former employee during valid employment contract term and subsequently rejected the employee's attempted exercise of options, the *exercise* of which was explicitly provided for in the employment contract).  More fundamentally, the record is devoid of any evidence that Plaintiff ever attempted to exercise his options at all prior to leaving Pfizer, let alone that Pfizer refused to let him do so.  Indeed, in his April 2005 conversation with Merrill Lynch, Plaintiff only inquired as to the potential impact of a voluntary separation on his exercise rights.  Def.'s Motion, Ex. 1, DEF000338.  In this case, no reasonable factfinder could determine that Plaintiff's own failure to exercise his options could have been the result of any breach of a contractual obligation by Pfizer.  Therefore, WPCL cannot offer Plaintiff any relief.

IV.     CONCLUSION

        In conclusion, for the reasons articulated above, Defendant Pfizer is entitled to summary judgment on all of Plaintiff's claims.  An appropriate Order and Judgment follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY CAPPUCCIO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PFIZER, INC. | : | NO. 2:07-CV-0549-LDD |

ORDER AND JUDGMENT

AND NOW, this 30th day of August 2007, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 14), Plaintiff's Response in Opposition (Doc. No. 17) and

Defendant's Reply thereto (Doc. No. 24), for the reasons set forth in the accompanying

Memorandum, it is hereby ORDERED as follows:

1. Defendant's Motion (Doc. No. 14) is GRANTED.

2. Judgment is entered in favor of Defendant Pfizer, Inc. and against Plaintiff Jeffrey Cappuccio on all counts.

3. The Clerk is directed to mark the case closed for statistical purposes.

BY THE COURT:

/S/LEGROME D. DAVIS

Legrome D. Davis, J.